at all. We'll hear from Mr. Champion. May it please the court, good afternoon. My name is Austin Champion and I represent the appellants. I've reserved five minutes of my time today for rebuttal. I would like to focus my time today on two issues. Number one, the lack of record evidence supporting a finding of deletion or an inability to restore deleted files. And then two, the standard of review that should be applied in this case. On the record below, Marshall Shannon, who was a defendant and an owner of the other defendant entities who are appellants, on the record below, Mr. Shannon instructed a technician to delete a log file. Can you turn that down just a little bit? Everything's a little too hot. It's reverberating a lot. So that's not a reflection on the argument or the arguer, just the volume's a little too high. Okay. Go ahead. Better the argument than the bench. I'll take that. He additionally admitted to deleting log files and other data if he reinstalled the machine, so reinstalled the operating system. He admitted to disabling Phillips remote monitoring software. But he denied deleting log files on all MRI machines that were the subject of the claims. From this record, and with no other evidence of deletion, the district court concluded that the appellants likely deleted every log file on every machine and entered case terminating sanctions against the appellants and a judgment for $6.05 million. So I want to start with Rule 37E. Rule 37E requires that there be lost ESI and that it cannot be restored or replaced through additional discovery. And that burden is on Phillips in this case to prove those two elements have been met. Notably, Phillips did not attempt to obtain discovery of these log files that were in these machines that are the subject of the litigation. It's important to note that Phillips does not own these machines and appellants do not own these machines. These are machines owned by clinics or hospitals out in the field and the appellants have service contracts where they go out and work on them when requested to. The record is clear that Phillips never attempted to locate the machines or inspect the devices for the log files. Well, they went to Alaska, I thought, and the machines had responded. That's true. They made an attempt to find a machine in Alaska. I don't believe they went to Alaska. And notably, they didn't talk to appellants about where that machine could be. They didn't talk to the hospital about where that machine could be. They looked at their own internal data and just said they couldn't identify where it was. Isn't this all, though, rested on a clear error standard of review? It is, yes. The district court went through 29 pages' worth of pretty meticulous fact findings and synthesis of those facts to reach its sanctions decision and then to reach its damages decision. So where is the clear error? Judge Wilson, I think that's a great question. The clear error is there is no evidence to show that the ESI issue was lost. Well, but I mean, you've got, you went through the testimony of Mr. Shannon and the district court flatly said, I don't find him credible. That's a pretty devastating finding that we don't really have any basis to say, well, is it clearly erroneous or not clearly erroneous? But it infects a lot of other things. And the district court explained all of this in great detail with record support to do so. No, you're correct. But I think it's important to note, and I think it's the traveler's case that this court wrote, that you can't say because someone denies something and you don't believe them that the opposite is true. And that's what happened here. Well, but that minimizes what else is in the record. I mean, we know that the logs were deleted. We know that there was admission of deleting some. So the inference would be, well, maybe many others were deleted. And I guess the Alaska excursion, whether it was to go find all these machines and try to do the third-party discovery, you say, your client says, would have ameliorated the spoliation issue. Yeah, I don't want to belabor the point. But I think it's clear that there isn't evidence that, for example, the machine in Alaska had lost or deleted ESI. For example, there's no evidence that that exists because they did not attempt to do any third-party discovery. And that applies to all the other machines. So without evidence that it was deleted, I do not think it's fair to turn around and say, well, I don't believe your denial. And so I get to assume the opposite is true. I think that denial would contradict a fact that shows something else. And then you get to say, I'm going to look at that fact and believe it and disbelieve you. But we just don't have those facts here that would allow the court to reach a finding opposite of what he's denying. And I think that's because the record doesn't show any actual evidence of any machines that have deleted ESI. But, Judge Wilson, to your question and to take it a step further, even if it is deleted, it was still Phillips' burden to come back and show that it couldn't be recovered or replaced. And they didn't do that. And I don't think you get to just point to the fact that you don't agree or that you think that the witness is lying. I don't think you get to- But they had expert testimony that said there's no way to trace all this once it's deleted. Well, they actually had one of their witnesses, I guess, say once it's deleted, it can't be recovered. Sure. And I don't think that goes to the issue. I don't think saying that if a file is deleted, it can't be recovered is what the rule 37E is contemplating. I think 37E, and I think the commentary is very clear to the rule, that digital data can be kept in many different places. And then when things are deleted, they're not necessarily gone. But here there was evidence that it was. No, there was no evidence on the record below that any of the subject machines were missing What discovery specifically would have replaced the deleted log files? Well, I'm going to answer that in two parts. First of all, I think any third party discovery to the owners or people that operated these machines would have been vitally important to Phillips's motion because it would establish, one, deleted ESI or not, and then two, whether it could be replaced or recovered. And then that didn't happen. And so I think a third would have been sufficient. I think an on-site inspection and having an expert look at the machine and assess whether log files were present would also be sufficient. I'm confused because I thought the log files were deleted, definitely. And it's what they could have gotten were the system log files, which is different. Allegedly, the court spotted your client that, that said, didn't think probably they could, but said, well, even assuming that they can get the system log files, then the expert said the system log files without the other log file data, it does not enable anyone to do anything. And so, therefore, it's the deletion of the log files makes it impossible and therefore can't solve the puzzle. I think that is accurate. That's what the court found. What part of that is wrong? Well, I think the court found that the files had been deleted without evidence at all to show that they had been deleted, and then adopted the expert's testimony at the sanctions hearing that said if it's true that they're deleted, he said it couldn't all be put back together. Now, I think that is partially true what he said, but it's of no, of no issue. The point is the court. But he says that Shannon and Roger West testified that they deleted the service log files off the service log books. That's testimony. One instance. Correct. So the key here is that we've taken an admission by Mr. Shannon that he did delete a few log files in connection with reinstalling software. And Roger West, too. And Roger West. And extrapolated this to cover every mission. And deleted them after the lawsuit. I'm sorry? Deleted them after the lawsuit was convinced. That's true. And deleted them after the court ordered there not to be deletions of I do not know if that's accurate. I'm sorry. I just don't. But wasn't there some order to preserve evidence? I mean, it's implicit. Sure. When litigation commences. But it happened throughout the litigation. Right. And while it may not be totally on point, the issue here is that he is attempting to restore medical equipment, reinstalling software, and in the process of doing that, log files would get. Well, I mean, yeah. His argument was, well, this happens all the time. I got this error message that said the data's full or whatever. It has to be deleted. And the court didn't buy it. The court said, no, you did this to sort of cover your trails. Sure. And there was evidence that at least one trade secret was accessed by this fake IST. Correct. So they falsified an IST to get access to these things. I mean, I don't know. I'm just struggling to see what the clear error is in the court's findings that this was all a deliberate and willful effort to spoliate some very key evidence. I think the issue that I want to hone in on is very, very simple. There is evidence of some deletion. There is not evidence at all of mass deletion or lack of recoverability of these files. And that's the issue, is that this case was terminated. The rug was pulled out from under Mr. Shannon and the appellants based on an admission that a few log files had been deleted. And I think that's a critical issue, is that we've taken a case that could have been decided by a jury, we've stripped that away, and we've no evidence that log files were actually missing from the machines and no evidence that they could not be restored if they were in fact missing. Now, Phillips knew it needed third-party discovery. It told the magistrate judge in a discovery hearing in September of 2023 that it had not yet gone out to go inspect these machines to determine whether or not what Mr. Shannon was saying was true. That was a statement they made on the record at that hearing. And then discovery closed 10 months later. And they didn't go do anything. And if you think about it, they would have to have that evidence to prevail at trial, to show use of the trade secret. They didn't engage in discovery that they needed. What more could Phillips realistically have done? Well, let's take that at a broad brush. They had to prove misappropriation of a trade secret. And to do that, they would have to prove use. And they didn't go set forth to find evidence of use and misappropriation of a trade secret. So what they should have done is they should have engaged in third-party discovery to show that this information had been used. And they would have looked for the log files. And they either were there or they weren't there. And they just didn't do it. They get outside the discovery window. And then they turn around and they say, it's all been exfoliated. That's not right. They didn't go even look for it. And it's their duty to show that it's gone and that it can't be replaced. So I think that's what they should have done, engaged in that discovery. And it's true. The trial court found Mr. Shannon not credible. We can't change that. I wouldn't ask you to. But I don't think we get to flip that and say, well, because he's not credible, we get to believe that everything has been deleted without evidence that it has been deleted. And of course, it follows that there's no evidence that they can't be replaced because they never went and did any forensic analysis. We have the CalCIP case from this court, where there's extensive discussion of analysis of deleted data. And the court rightfully concludes that it can't be replaced. It's been deleted. It's prejudicial. And all the elements are met. We don't have that here. We don't have any of that. If we move to the second part of the analysis, and we go back to CalCIP, we have a heightened standard that we have to apply. And that's based on case law in the Fifth Circuit, coupled with the rule itself. We have to have exfoliation that substantially prejudiced Phillips. That's under our case law. And it has to be caused by us. And if they, Phillips, take no action to go even look for the evidence that they must have a trial, I don't think it follows that we have prejudiced them. I just don't think it does. I think they prejudice themselves by not getting discovery of the very thing that they needed to even attempt to prevail a trial. There's a couple of quick questions on different topics. There are a case, the district court dealt with, I guess, two in its default judgment, left the others for another day. Do we have, we do have jurisdiction here? Yes. And it's a final judgment. I just, remind me how so? Yes. We had federal question jurisdiction with the defense. I'm talking about for appeal. Oh, yes. We have a final judgment that was entered by the district court that ultimately took the sanctions award and its summary judgment on the other claims. Was entered later, rendered it into a final judgment. What about the counterclaims of, I guess, image one and I'm forgetting the other entity that asserted them once before, didn't assert them in an answer. Now you're saying they should have not been found waived. That's right. So procedurally, just to recap, or to take that very quickly, we had originally filed counterclaims on behalf of Mr. Shannon and image one. Yes. And then Phillips amended and joined Axiom and image two. Those two parties filed virtually identical counterclaims in response. But image one and Shannon did not in responding to the, I guess, first admitted complaint. Yes. What's your best evidence though that image one and Shannon intended to reassert or continue asserting their counterclaims? Because the evidence in the two, Mr. Shannon is the owner of all the parties and it would make no sense for him to abandon claims on behalf of himself and one of the three other entities. Well, okay. That's, that's sort of reasoning, but what in the record shows that Mr. Shannon and image one continued to assert their counterclaims when image two and Axiom actually asserted them? Sure. In the record, you can see that there were discovery requests propounded by all defendants that went to the issues of the antitrust claims. And two, there were. But could Shannon and image one specifically asserting discovery requests for their counterclaims? I think it was a joint defendants apostrophe request. So not, not sorted out. Probably true. I think they all as a group asserted them. They all as a group served an expert opinion, which Phillips noted the experts said he's retained by two of the parties, but it was served on behalf of all of the parties, all of the defendants. As well as there was some email correspondence that I think is in the record that reflects that they were trying to identify topics. I'm going to give you each an extra minute because you still have, you haven't told us at all yet that, about the second issue that you were going to talk about. Yes. And you, would you like to ask questions? You may just jump in. Go ahead. Okay. Standard review. This court has always applied in connection with inherent sanctions, um, a heightened standard of review that refines bad faith. You're talking about that the district court should have applied a higher standard of review. I apologize. Evidentiary standard. Yes. We're not talking about a standard of review, which we've been doing under clear and convincing under this. You're talking about the district court should have used that standard in reviewing the claims. Yes. Unmisspoke. It was standard of proof. Correct. Yes. Clear and convincing. The district court's pretty adamant. I, I agree. I do think that's the appropriate remedy. But why do you assume that it should have been clear and convincing? Because we already have a four part CalCIP test. And we, we, I have, we, we ever said that it, that the standard of proof is clear and convincing. Well, because the four part test is what's designed to be a heightened standard of proof. Why isn't that enough under preponderance? I think the case law from the circuit shows that when you apply a bad faith standard or, or a evidentiary standard, that it inherently requires the court to also look at it from clear and convincing evidence. Have we ever said that in this context of this four part standard that we've applied on a number of occasions? I don't know if it's been expressly said, but the court has applied clear and convincing in inherent sanctions context. The district court has. The district courts have, but we've never said they must do it. I think that's correct. Yes. Sorry. And so we've never said that they must do it. And so how would the district court have known that it should do that if that's what you're thinking is the law? Well, it was, it was briefed by the parties and the district court went one direction as opposed to the other, but I think it's an issue. Do you choose to say, Oh, I'm going to only find preponderance and the district court didn't seem to be caught up in whether it was preponderance or clear and convincing. And as you were just, we were just discussing the district court is pretty adamant about its findings. I don't know that the district court faced a crossroads and said, I'm going to apply preponderance versus clear and convincing for the standard of proof. I don't believe the district ever did that in this case. I certainly don't know. It's not on the opinion, so it's not clear to me either, but the parties requested different standards and the court applied the preponderance standard. Okay. They say you forfeited it and that you didn't actually request it. You just cited a case that had it in it, but you never asked the district court for that. Do you want to address that? I'll, I'll say this cause I'm so over time and I apologize, but I, we briefed that in a reply brief. We explained to the court exactly how we believed it wasn't waived. Like I just said, you cited a case that used the standard that you wanted to be used from a district court. Yes. Western district or something. Yes. And I think we asked the court to apply clear and convincing. Did you ask the court to apply that in your brief in the district court? And where did you do that? If we, as opposed to just citing a case that used that standard. I want to double check and I'll tell you in my rebuttal because I don't want to mislead you. Okay. Thank you. I appreciate it. Okay. You think further? No. Thank you. You have time for rebuttal. And you can have two extra minutes because I spent more than a minute extra with your friend on the other side. I may have pleased the court Gerard Donovan on behalf of Phillips. The controlling law makes clear that they have an extra sanction entered here under rule 37 as an exercise of discretion by the district court. And the record shows the soundness of that ruling. Given that when controlling standards of review are applied, there's no path to reversal, whether you look at the burden issue, the actual sanction itself, or the amount the court awarded for the reasons that the court gave. Starting with the burden of proof under rule 37E2, to be sure that's a novel issue before this court. But the Supreme Court has made clear that in monetary sanction cases, including ones for severe monetary sanctions, the preponderance standard that the court applied here is what the law commands. Is this monetary sanctions or is this a death penalty sanction such that it's total judgment? And so does that make any difference as opposed to just your fine, $1,000 or something? It's both monetary sanctions and as a default judgment, but it doesn't make a difference in this context. It's a civil case where money's at issue. And so that default judgment would still be under the preponderance standard. And that's what the court was explaining in Huddleston. In civil cases where money's at issue, the default standard there is preponderance. And in that case, the appeals court held that a clear and convincing standard was required when it was an SEC case. And the court explained that the default, when there's not a higher burden of proof specified, is a preponderance standard. Here, rule 37E2, rule 37E generally, doesn't call for a higher standard. And nothing about its purpose suggests that there should be a higher burden of proof. Have we ever articulated what the right standard of proof is? No, this court has not specified the burden of proof under rule 37E. To your question. Other circuits have. Yes, other circuits. Well, one circuit has. That's the second circuit. Has any circuit gone to the contrary such, would we be creating a circuit split were we to say that it was clear and convincing standard of proof? Yes. Yes. Currently, one circuit has addressed this. It found a preponderance standard. That was the second circuit. The seventh circuit in the Ramirez case has addressed rule 37B. I believe it was not 37E2. But in a similar context, in a civil case and in civil sanctions, it also found that preponderance standard was appropriate. Do those circuits have the heightened showing that we have that sort of extra textual in terms of rule 37? I'm not aware of them having the specific additional heightened standard that you have. The standard that we were discussing with the I will say in this court's decisions addressing that standard that were cited in the briefing, and that includes the FDIC Connor, the Brinkman, and the Abner decision, those cases addressed that there is the heightened standard, and they addressed the four-part test for that standard. But those cases did not specify the burden of proof required for that standard. And so those cases don't hold that a clear and convincing burden is required there. The cases from the inherent power to sanction where you don't have a rule specifying the authority. And that's I view as different than rule 37 issue here where you have express authority. And in the inherent sanction cases, the clear and convincing requirement is just to show I believe it's the destruction of the information. It's not the specific requirement here that rule 37E2 requires where it's being destroyed to prevent the other party from having it for litigation. So rule 37E2 also sets a higher bar. And that was part of the reasoning of the Hoffer decision from the Second Circuit of why this rule does not require a heightened evidentiary burden even though other sanctions and I believe the prior precedent within that circuit did require a heightened standard. If we were to say that contrary to your argument that the Fifth Circuit would have a heightened evidentiary burden in the district court going forward, would we need to send this case back for the district court to look at this under that burden or are there other reasons why we wouldn't need to do that? No, Your Honor. There are two reasons why we would not need to do that. First, the argument was not preserved that a higher burden was required. You asked about what argument was made in the district court briefing and that's at page oh sorry appendix page or record on appeal 16223. There's one sentence that says courts regularly require the moving party to establish the necessary spoliation elements by clear convincing evidence. It doesn't ask the court expressly to adopt that standard but even if you assume that they said the standard should be applied, they didn't advocate for the standard. They didn't explain why the preponderance standard shouldn't be adopted here. They have one sentence in their brief with one citation to a district court case whereas on appeal they have several pages citing to other circuits and that's presenting an argument. That's pressing an argument for resolution. We didn't address it in our reply because we didn't see it as a dispute. The court didn't address it because it didn't see it as a dispute. It didn't find for one party so there is no record here on appeal so even if this court was to determine that a clear and convincing standard should be adopted which I disagree with for the record but that wouldn't require remanding because they did not preserve the argument it's reviewed under plain error and because there's a current dispute about this, this would be creating a circuit split. The only circuit to address it has found adverse to appellants. There's clearly not a plain error here. Second, the record clearly shows the intent to deprive even under clear error review. So what's the single strongest piece of evidence on intent? The strongest piece of evidence is that Mr. Shannon at the hearing admitted to deleting the log files to shield that information from Phillips and that was in the record on appeal at 8963. I'd say the close second would be the text message from Mr. Shannon to Mr. West during the litigation after Phillips moved to compel these exact files. This asked Mr. West to turn off Phillips from monitoring of the system and to go into the log and delete his entry and so this isn't general deletion of logs. This isn't some part of system maintenance. This is specifically tied to hiding this information from Phillips. This is when it's expressly clear years into this litigation as we're fighting for this information discovery that this is fundamental to our cases. We're arguing that this is fundamental to the damages in this case and he's secretly texting employees to delete this exact information. But these aren't the only pieces of information supporting that. The court also cited to Shannon instructing others to delete log files and that was in the record of appeal at 8923. I'm sorry the Roger West text testimony was at 8942. How do we how do we know the missing logs weren't recoverable or replaceable through additional discovery? Because there's no evidence to suggest that and only evidence to the contrary that the district court did consider. Shouldn't the district court have tested that theory like by having them do some third-party discovery and have it not work? I mean that none was required is somewhat problematic is it? Isn't it? I don't think it is and there's a few reasons. First there's testimony from both lay and expert witnesses about how once this information was deleted it's gone. And so we have that from Miss Dixon at the hearing and Dr. Orso explained how when these files are deleted it prevents him from piecing together the puzzle of information showing what they did. That's a hard sell. I mean maybe it wasn't good enough and by clear and convincing it's a good enough sell. But normally nothing is ever truly gone is the kind of the mantra of information that's stored and preserved and you know that so the idea that it's truly wiped in every iteration is is a hard sell. Yes your honor and I understand that's true in many computer contexts. In the CalSEP case we're talking about a code review system where you know that's a system where it archives time dates everything. These are our log files on million dollar complex computers but these are some of the you know specific files that are overwritten thousands of times. They're keeping the information every second of what's going on and this is information that is normally backed up to Phillips system. Normally there would be a backup. They disabled that backup when they turned off the remote monitoring of this and the testimony from Phillips from Miss Dixon is when these are deleted they are gone. The testimony from Dr. Orso. If they hadn't disabled the backup in the whole system. Disabled the backup for all of them right? As far as the testimony was that they did it as a routine practice and that they instructed other people between 150 or. If they hadn't done it as a routine practice do you think this would come out differently? Yes I think if they had allowed this information to be detected by Phillips and you know if they hadn't modified. Yeah if they hadn't the backup. Yeah if they hadn't. Then this would be a stronger argument. I think then potentially it would be available through another source as the backup but they deleted both the original and well first they turned off the backup so that it wouldn't be backed up in the first place then they would delete the files is what the text message is. Yeah they turned off the backup. That's essential it's not just deleting the files that they. That's correct. Intentionally turned off the backup. That's correct and the argument that they made that additional files would cure this or would provide the information that was missing. They argued that there's a lot of log files on these systems Phillips could look to the other log files and Dr. Warsaw said no. He went and he analyzed the various information and explained how. What did he analyze to decide that he couldn't do it? He analyzed the different log files themselves and so he did have some examples of the log files and he's analyzed log files from other systems where they weren't deleted where it wasn't systems that defended service and he understands how this information you know is pieced together that you have one log file that shows the specific tools that are used and how the IST certificate that's the encrypted security certificate that's used for access provides the authentication and gets the access you also have logs showing who's using the system and you have logs there's the service log book that you can log into with name information and you need to piece the information together from these different sources to see what's going on otherwise you could have higher level tools used but they can be being used by someone who legitimately has access to them and so having just the proof that the higher level tools are used doesn't piece this together but the other side seems to think that y'all just waited too long and didn't do third-party discovery and that you were scrambling and the court yeah that's something great for you that is that a fair characterization of the situation no it is not this was a case where phillips tried for years struggled to get discovery we were impeded every step of the way we had to file three motions to compel to get any of this information when we got the information from allen's it was a mess it was documents appended together missing pages all sorts of things and so it was a struggle throughout discovery where it seemed like they were impeding again to to hide the extent of what they were doing that was the constant challenge but you heard you heard counsel opposite say there were deletions i don't think that's in dispute but there's a real question about the extent of the deletions whether there were mass deletions so what evidence was there is there in the record that allowed the district court to go from particular admissions i deleted this i got a message on that machine etc to the idea that this was a mass deletion and mass access etc i mean there was one substantiated we'll use that word use of a trade secret one um and the district court didn't say oh yeah all 511 were used but but still awarded half of the damages that phillips requested so what evidence fills in those gaps sure so you do have evidence that shannon said he deleted these as routine service he instructed many other people to delete the files and continued deleting them during litigation but also to the district court's analysis my friend said that she reached the conclusion that all of these log files were deleted and that's not the case in her decision she explained that it is not clear how many log files defendants deleted or how many times defendants deleted log files during the litigation and that's in the record at 5906 but she was analyzing as an appropriate sanction what would be fair what would put phillips back in the position it should be in without giving a windfall to either party here as part of that she looked to a reasonable royalty analysis and in a trade secret case the reasonable royalty analysis looks in a hypothetical negotiation to what the trade secret misappropriator got at the time of the acquisition and here if they were if there's a hypothetical negotiation for what mr shannon got what he got was ist level two access that's this suite of tools and that's what's indisputably used as what defendants forensic expert also found that they use to get access to these higher level tools and phillips systems are designed this was testimony from miss dixon and from mr orso and appellants expert they're designed to only allow access based on these service levels you can't license individual tools on phillips systems they're not built to allow that they'd have to be completely redesigned to facilitate that so in a hypothetical negotiation maybe looking at the value of these tools that's what would have been negotiated for at the initial at the start of the misappropriation given that you would have the appellants sorry phillips expert opined that you'd have a baseline of 12.1 to i believe is 13.3 as the cost for this as part of his georgia pacific analysis for this he also considered uh the the revenue of defendants and other factors and he ultimately reached a conclusion that some of those factors are a wipe and that the reasonable royalty would be at least 12.1 million appellants did not propose an alternative reasonable royalty they argued that because phillips doesn't have the log files to show the uses of these they should get off without any liability the district court considered these it considered the reasonable royalty that phillips proposed it analyzed the evidence the expert testimony supporting that and it used that as a starting point that was tied to the specific misappropriation here it however then went on and it considered that based on the one surviving log file that it was able to examine that that amount should be reduced under bigelow the supreme court's test that when when information is destroyed then that information should not be used against the innocent party here the court used the fact that one log file was survived and it showed limited use to assume appellants would not have used all the tools i don't think that was a fair assumption in view of the fact that we have much more extensive use than than the log files show we have admitted use you know on more systems we have forensic evidence showing more extensive use of certificates without the logs to show what was used but even given that fact those within the discretion of the district court to consider what would be fair to the parties and she determined that because that log file showed only use of one tool that they probably wouldn't have used all of them and so she reduced the royalty by 50 from the debate the lower end of the range from mr of 12.1 to 6.05 she also did that taking into consideration the the finances of appellants and determined that that would be fair as part of that analysis for what a fair sanction should be she also wanted to consider both that it wouldn't be a windfall to phillips but also that there wouldn't be a windfall to appellants because here you have a case where the the base liability the fact that they acquired this hacking tool to breach phillips security and get access to the tools was clearly shown and you had their own forensic expert finding that the available evidence showed they were dishonest about their use they used this to use tools that they said they didn't use they use this more often than they said they used it they got another fake certificate even before the one they admitted to and was you know that they produced in discovery so we have egregious conduct here and the court found that if we were to further lower the sanction then you'd be creating a situation where independent service organizations would be motivated to delete the logs on these systems they could hack the systems they could delete the evidence and they get off with effectively a slap on the wrist because a judgment against them with no damages is going to be a productive business if they can use phillips intellectual property to make a lot of money and destroy the evidence and that's what we have here and the court reasonably found that this is a fair assessment of the damages and that was within her discretion to determine can you address the uh moot the allegedly moot counterclaims uh yes your honor so the the procedure we had was that initially there were counter claims filed against shannon and image one there was a first amended complaint where shannon filed counterclaims again this time image two swapped in an image one did not assert counterclaims uh then there was a second amended complaint phillips moved to dismiss those let me back up phillips moved to dismiss those claims when phillips moved to amend its complaint to add as parties image tech two and axiom when it found out about their involvement in this the court granted that motion for leave but then it it denied phillips motion to dismiss the earlier counterclaims as moot and so when it did that it indicated to the parties that those claims were no longer live if it wouldn't have been mooted if those claims were still live and it would have taken up the merits of phillips claim when they replugged the counterclaim or sorry when they filed their new amended answer to this i believe the second amended complaint at that point then the original defendants shannon image tech did not assert counterclaims the later defendants did we went on through so they didn't put them in their in their new answer no they did not and the law says that that's not you know that's not the end of the story if they evidenced a clearance tent to continue to pursue those but they didn't they went on to pursue the counterclaims through the entity defendants that were later added and when it got to the the expert disclosure they referred to these were expert disclosures made on behalf of all four parties all four defendants because they're all parties to the litigation but the substance of the expert disclosure what their own antitrust expert the counterclaims expert said is that the counterclaim plaintiffs are image two and axiom he did not identify image one or shannon as the counterclaim defendants and so we have a record here that shows what from every aspect appears to be a strategy to no longer pursue to counterclaims through the first two defendants instead pursue them through the second two and then the strategy on that uh my guess would be that these are antitrust counterclaims and mr shannon doesn't have a personal antitrust counterclaim against phillips he said the image tech one entity was no longer a practicing entity and so they probably determined that these aren't right plaintiffs in the first place and so it just would have been another motion to dismiss issue but whatever the strategy was the record does not reflect any clear intent to maintain those counterclaims and here the posture of this is that the district court it ultimately dismissed the amended uh counterclaim or the sorry the joined parties counterclaims the counterclaims from image to an axiom and then in a request for reconsideration of that the original defendant said wait a second our counterclaims should be revived and the court wasn't even ruling on those counterclaims at that point it was now looking back years ago to those non-pursued counterclaims and the court certainly didn't abuse its discretion because there was no record showing a clear intention to continue can we jump back to the proper evidentiary standard yes your honor um do we necessarily even have to determine that on this record no you don't in the um i'm blanking on the case name uh in the case in the brief uh seal the pelly one uh this court had a similar issue where the question was what what a burden of proof should have been applied below the district court applied a preponderance standard on appeal the argument was that a clear and convincing standard should have been applied and this court said we don't need to reach that issue because here the evidence is so one-sided that it meets either standard so we can affirm based on the evidence and on the record presented here without addressing what the appropriate standard is so this court doesn't need to reach the standard at all if it does reach the standard and determine a clear convincing it could also still affirm because the record easily meets that standard apart from the waiver issue i see i'm about out of time uh if there are any other questions i'd be happy to answer them um thank you thank you thank you before we uh before i took a break i told you how we could find the site but i the appellants briefed to the court that courts regularly uh require the moving party to establish affiliation by clear and convincing evidence um and then that was at 16 223 um they cited to the western district texas case that we briefed in our briefing and then they argue that plaintiffs failed to meet this burden that was what the appellants urged the court to do in its opinion the court at 59 1 5 in the record um declined and used the preponderance of the evidence standard and that was the sum total of that um i want to talk a little bit about lesser sanctions and specifically um when when i started i told you what i believe the record reflects with respect to deletions i didn't hear anything new from phillips i think that stands their limited record of no record of third-party discovery to do anything to confirm whether they were recoverable now the issue of like lesser sanctions i think is important because it's it's it's notable that phillips had logs that it utilized for purposes of the sanctions hearing it had logs that did not they weren't manipulated they weren't deleted uh they weren't tampered with they were real logs and they showed what was being done and they relied on those logs so they had some logs um and then you have miss dixon who testified that she not her personally but phillips engineers could deduce what tools were being used based on the description of the services performed in appellants invoices and so i we argue as well in addition to what i've already raised that the court erred by not considering lesser sanctions especially in light of the lack of actual evidence of mass deletion and so um i think this dovetails with the damages question so quick quick um so what lesser sanction would have restored phillips to the position you would have occupied had the logs not been deleted i'm gonna give you a lawyer answer and then answer your question they didn't do any discovery so their position was they had no evidence because they didn't seek it but to answer your question directly um i think a instruction to the jury would have been sufficient that for example if some logs had been deleted i think they could have told the jury that you may assume that they've been deleted that they were the trade secrets were used and then that the evidence that would be proffered by phillips as to which tools were used isn't going to be controverted i think that would be an example of a lesser sanction that could have been taken to trial to address this issue um but this also dovetails with damages right because phillips testified that it could deduce what was being used by appellants in connection with its invoices but then they proffer this opinion that presumes 511 tools were being used um and and of course that opinion is of no real value if all 511 tools are not being used and so i think that is an additional argument that supports why the damages opinion was not appropriate i'm sorry damages award was not appropriate as well as the fact that it was seemingly arbitrary to just chop it in half um in view of um the court's own finding that it didn't appear that all the tools were being used um i think phillips had the opportunity to assess which tools they believed were being used and it just didn't do it um a couple other things i'll touch on um yes phillips complains that the automatic backups were turned off that is not spoliation it's not deletion backups are record creation in another place the machines are not owned by phillips um and so anything related to not having automatic backups turned on i believe is a red herring um i think it's also important to note and uh mr donovan hearing if it's how you would go about looking at these third party the third parties would have that information but if they don't have it regardless of whether it was appropriate to have turned them off or not or whether it's totally happenstance it's it means that you can't get the information you need so it's not a red herring it's it says you can't while it might have ordinarily been available it's not because this intentional act was also undertaken i'll answer that with an analogy my phone has data on it if i do not back it up to iCloud it does not mean i've deleted my phone data no but it also might mean that an expert can say i can't get it if you did delete the other localized backup that's right that's true if it had been deleted this would have been a great way to go find it but there's no evidence that it was deleted and so to say that it's a problem that it was turned off i think kind of jumps the shark it's a heart cart before the horse i'm out of time thank you judges thank you we have your arguments we appreciate the arguments the case is submitted the court will stand in recess